IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| **SUSAN A. JOHNSON**, <br><br> Plaintiff, <br><br> v. <br><br> **IRWIN COUNTY DETENTION CENTER, LLC**, <br><br> Defendant. | Civil Action No. 7:12-CV-20 (HL) |

**ORDER**

This case is before the Court on Defendant's Motion for Summary Judgment (Doc. 20). Because Plaintiff did not timely file her Charge of Discrimination with the EEOC, the Court grants Defendant's Motion for Summary Judgment.

**I.     SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir.

2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S.Ct. 2505 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249–50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Trial Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348 (1986)).

## II.   FACTS[1]

Plaintiff Susan Johnson began her employment with Defendant Irwin County Detention Center ("ICDC") on November 30, 2009. She was hired as a transport officer but also did correctional officer work.

On or around February 4, 2010, Plaintiff and another ICDC officer, Renee Young, transported female inmates from Knoxville, Tennessee to the ICDC facility in Ocilla. Upon arriving at ICDC, some of the female inmates who had been on the transport complained to ICDC officials that Plaintiff and Young acted unprofessionally on the trip. On February 8, five of the inmates on the transport wrote statements alleging that Plaintiff and Young were driving erratically, talking and texting on their cell phones while driving, and hanging out of the vehicle's windows trying to get truckers to honk their horns at them.

ICDC then began an internal investigation into the alleged unprofessional conduct. Both Plaintiff and Young were asked to provide their cell phone records for the date of the transport. Young complied and provided her cell phone records. She also admitted that she had engaged in some of the conduct complained of by the inmates. Plaintiff refused to turn over her phone records because she did not believe she was required to produce records from her personal phone.

---

[1] The facts in the case are generally undisputed. Because the Court finds that the case must be dismissed on procedural grounds, rather than the merits, it is not necessary to get into the minutia of Plaintiff's claims.

3

On or around February 17, 2010, Plaintiff was called to work by her supervisor, Lieutenant Elaine Burch, in order to go on a transport trip to Tennessee. The trip included Plaintiff and three male officers from ICDC, Rusty Cravey, David King, and Greg Chancey. Originally, four male officers had been scheduled to go on the transport trip, but the fourth officer quit just before it was time for the officers to leave.

Burch had only reserved two hotel rooms for the trip. At some point before leaving Ocilla, the three male officers requested extra money from Burch to pay for another hotel room for Plaintiff. Burch did not provide any additional money. While on the trip, Plaintiff attempted to call Burch about getting another room, but Burch did not answer the phone. Plaintiff did not contact any other supervisors at ICDC to request funds for a separate room. Plaintiff did not pay for another room herself, and did not ask any of the other officers to help pay for another room. Plaintiff asked Cravey to sleep in the other room with King and Chancey, but he refused.

Plaintiff ended up sharing a two-bed room with Cravey. Nothing inappropriate happened between Plaintiff and Cravey, but the next morning Plaintiff received a phone call from King in which King made a comment about hearing Plaintiff and Cravey in the room the previous night. Plaintiff responded by telling King not to "go there" and that King was not going "to ruin [Plaintiff's] name." King stopped his teasing and made no further comments to Plaintiff.

Neither Chancey nor Cravey made any comments to Plaintiff about the room sharing. The only other comments made to Plaintiff were from a couple of unidentified officers who said they heard Plaintiff had to sleep in a room with Cravey. No other comments were made after that. Plaintiff never reported the comments from the unidentified officers.

Plaintiff claims she began to suffer from anxiety attacks due to the combination of a divorce she was going through and the February 17 overnight stay in Tennessee.[2] The result of the anxiety attacks was a disability that "prevent[s] her from being confined in small, enclosed places." During this time period, Plaintiff was being treated by Dr. W. Steve Anderson, who diagnosed her with generalized anxiety disorder.

Plaintiff was sick and out of work on March 1 and 2, 2010. This sick leave was approved by Burch. After returning to work, Plaintiff provided a note from Dr. Anderson, dated March 4, 2010, requesting that Plaintiff "not be required to work in small closed spaces as this causes her to have anxiety attacks."

Plaintiff had a meeting with Burch and Deputy Warden Smith on March 8, 2010. She did not at that time have a note from Dr. Anderson excusing her from work for that day or any days in the future.

---

[2] Plaintiff filed for divorce in November of 2009. The divorce became final on January 6, 2010. She considered the divorce to be one of the most stressful things she had gone through in her life.

5

Plaintiff was scheduled to work a 6:00 a.m. to 6:00 p.m. shift on March 9, 2010. That morning, Plaintiff called in to report that she would not be coming into work that day. ICDC's Code of Employee Conduct requires employees to report sick absences to their supervisors at least ten minutes prior to their scheduled work time. According to ICDC, Plaintiff did not call in until 6:30 a.m. Plaintiff does not know what time she called in, only that "[i]f it was six o'clock, I called in before six o'clock. That's all I can say." At approximately 3:32 p.m. on March 9, Plaintiff faxed a doctor's excuse to Deputy Warden Smith. The excuse contained a stamped signature of Dr. Anderson and stated that Plaintiff had been under Dr. Anderson's care from March 8 and would be able to return to work on March 15. Plaintiff did not actually go see Dr. Anderson on March 9 but called his office and asked for the excuse.

Plaintiff's employment was terminated by ICDC on March 9, 2010. In the letter sent to Plaintiff, Barbara Walrath, Warden of ICDC, stated that Plaintiff was being terminated for her refusal to comply with the internal investigation of the transport trip and for her failure to report her sick absence to her supervisor on time on March 9. Plaintiff was still in her probationary period at the time of her discharge.

Plaintiff submitted an Intake Questionnaire to the EEOC on March 8, 2010. She filed a formal Charge of Discrimination on December 28, 2010, alleging sex

discrimination, disability discrimination, and retaliation. The EEOC issued its right to sue letter on October 19, 2011.

On January 20, 2012, Plaintiff filed her complaint in this Court, alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000, *et seq.*, and disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111, *et seq.*[3] Defendant has now moved for summary judgment in its favor.

### III. ANALYSIS

#### A. Exhaustion of Administrative Remedies

In order to maintain a Title VII claim, a plaintiff must first exhaust her administrative remedies by timely filing a charge of discrimination with the EEOC. 42 U.S.C. § 2000e-5(e); Maynard v. Pneumatics Prods. Corp., 256 F.3d 1259, 1262 (11th Cir. 2001). The charge must ordinarily be filed within 180 days after the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1); Maynard, 256 F.3d at 1262. "Failure to file a timely charge with the EEOC results in a bar of the claims contained in the untimely charge." Rizo v. Ala. Dep't of Human Resources, 228 F.App'x 832, 835 (11th Cir. 2007). These same timeliness requirements apply to a claim brought under the ADA. *See, e.g.*, Fry v.

---

[3] While Plaintiff listed retaliation in her Charge of Discrimination, she does not allege a retaliation count in her complaint and does not argue the existence of one in her response to Defendant's motion.

7

Muscogee County Sch. Dist., 150 F.App'x 980, 981-82 (11th Cir. 2005); Zillyette v. Capital One Fin. Corp., 179 F.3d 1337, 1339 (11th Cir. 1999).

Plaintiff's EEOC charge is dated December 28, 2010. The alleged sex discrimination took place on February 17, 2010, which was the date of the transport trip to Tennessee. The final alleged discriminatory act took place on March 9, 2010, which is when Plaintiff was terminated, supposedly because of her disability. Thus, on its face, the charge is untimely as to both the sex discrimination and the disability discrimination claims.[4]

However, Plaintiff submitted an Intake Questionnaire to the EEOC on March 8, 2010, which falls within the 180-day period. For purposes of completeness, the Court will analyze the Intake Questionnaire to determine whether it can be construed as a charge for purposes of timely filing.

The common view in the Eleventh Circuit is that as a "general matter," intake questionnaires are "not intended to function as a charge." Pijnenburg v. West Ga. Health Sys., Inc., 255 F.3d 1304, 1305 (11th Cir. 2001). However, under certain circumstances, a verified EEOC intake questionnaire can constitute a charge. In Wilkerson v. Grinnell Corporation, 270 F.3d 1314 (11th Cir. 2001), the Eleventh Circuit held:

---

[4] The deadline to file the charge as to the sex discrimination claim was August 16, 2010. The deadline to file the charge as to the disability discrimination claim was September 5, 2010.

> In sum, we hold that a verified intake questionnaire that includes the basic information suggested by 29 C.F.R. § 1601.12(a) may constitute a charge for purposes of Title VII statute of limitations when the circumstances of the case would convince a reasonable person that the charging party manifested her intent to activate the administrative process by filing the intake questionnaire with the EEOC.

Id. at 1321.

"The EEOC requires that a charge be 'in writing and signed and . . . verified.'" 29 C.F.R. § 1601.9. A charge is verified when it is "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgments, or supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. § 1601.3(a). Verification is mandatory. Vason v. City of Montgomery, Ala., 240 F.3d 905, 907 (11th Cir. 2001). There is also a statutory requirement that charges be "in writing under oath or affirmation." 42 U.S.C. § 2000e-5(b).[5]

The Intake Questionnaire was signed by Plaintiff, but was not notarized. Plaintiff did not swear or affirm the information in the questionnaire under penalty of perjury. The questionnaire was not signed under oath or affirmation. Instead Plaintiff just signed it. The Intake Questionnaire does not satisfy the statutory or regulatory requirements for a discrimination charge. See Francois v. Miami Dade County, Port of Miami, 432 F.App'x 819, 822 (11th Cir. 2011) (questionnaire does

---

[5] These requirements extend to claims made under the ADA as 42 U.S.C. § 2000e-5(b) is incorporated into the ADA. See 42 U.S.C. § 12177.

not serve as a charge where it was not verified); Pijnenburg, 255 F.3d at 1307 (unsworn intake questionnaire did not meet the requirements for a validly filed charge); Dees v. State of Fla., No. 4:10CV305/MCR/WCS, 2012 WL 662295, at *3 (N.D. Fla. Feb, 28, 2012) ("The absence of a verification renders the intake questionnaire insufficient as a matter of law to constitute a valid charge of discrimination."); Hammond v. State of Ga., No. 2:11-CV-00051-RWS, 2012 WL 181647, at * 3 (N.D. Ga. Jan. 23, 2012) (dismissal of complaint was appropriate because the intake questionnaire was not verified); EEOC v. Summer Classics, Inc., --- F.Supp.2d ---, 2011 WL 4481914, at *6 (N.D. Ala. 2011) (intake questionnaire regarding ADA claim would not be considered a charge because it was not sworn).

The Eleventh Circuit in Wilkerson cautioned that it would "not treat intake questionnaires willy-nilly as charges." 270 F.3d at 1320. Plaintiff has shown no reason why the Court should vary from the general rule that "an intake questionnaire is not intended to function as a charge." Pijnenburg, 255 F.3d at 1307. The Court will not consider the Intake Questionnaire as a charge. As Plaintiff failed to timely file her EEOC charge, neither her Title VII claim nor her ADA claim can stand.

### III.   CONCLUSION

Defendant's Motion for Summary Judgment (Doc. 20) is granted.[6] The Clerk of Court is directed to enter judgment in favor of Defendant and close this case.

**SO ORDERED**, this the 25th day of June, 2013.

>        *s/ Hugh Lawson*
>        **HUGH LAWSON, SENIOR JUDGE**

mbh

---

[6] While not raised by Defendant, it appears to the Court that Plaintiff's complaint was likely time barred in its entirety. Under both Title VII and the ADA, a plaintiff must file suit within 90 days after receiving the EEOC's right to sue notice. 42 U.S.C. § 2000e-5(f)(1); 42 U.S.C. § 12117(a). "[T]he 90 day time period commences . . . upon receipt, and not upon the mailing of the right-to-sue notice." Norris v. Fla. Dep't of Health & Rehabilitative Servs., 730 F.2d 682, 683 (11th Cir. 1984). The plaintiff "has the burden of establishing that [she] met the ninety day filing requirement." Green v. Union Foundry Co., 281 F.3d 1229, 1234 (11th Cir. 2002) (citation omitted). Failure to bring suit within 90 days gives rise to a defense analogous to a statute of limitations. Jackson v. Seaboard Coast Line R.R. Co., 678 F.2d 992, 1003-04 (11th Cir. 1982).

The EEOC issued Plaintiff's right to sue notice on October 19, 2011. Plaintiff filed this action on January 20, 2012, 93 days later. There is nothing in Plaintiff's complaint or motion response that indicates when Plaintiff received the right to sue notice. Instead, she only refers to the date the EEOC issued the notice. *See* Compl., ¶¶ 4, 19, 21; Pl.'s Resp. to Def.'s Mot. for Summ. J., p. 3, 5. As Plaintiff has not shown the date she received the notice for purposes of the 90-day filing period, she has not met her burden on this issue. While not deciding the case on this basis, the Court thought the issue notable enough to point out.